IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| BROADHEAD LIMITED PARTNERSHIP | § | |
| Vs. | § | CIVIL ACTION NO. 2:06CV009 |
| GOLDMAN, SACHS & COMPANY | § | |

**MEMORANDUM OPINION AND ORDER**

The defendant's motion to dismiss (#18) is granted in part and denied in part for the reasons expressed in this opinion.

**1.     Introduction**.

In this case, Broadhead Limited Partnership ("Broadhead") seeks to represent a nationwide class of persons and entities who entered investment advisory agreements with the defendant, Goldman Sachs & Co. ("Goldman Sachs"). The basis for the complaint is that Goldman Sachs breached fiduciary duties by failing to disclose all of the fees and expenses charged to the investors. Goldman Sachs filed a motion to dismiss, urging that the plaintiff's state law claims were all preempted by the Securities Litigation Uniform Standards Act ("SLUSA") and should be dismissed for this if not other reasons. In addition, Goldman Sachs maintains that the plaintiff's claims under the Investment Advisers Act ("IAA") are barred by limitations and a limited liability provision in the agreement. The court concludes that all of the plaintiff's state law claims are preempted, but that the plaintiff has stated a claim under the IAA that is not subject to dismissal pursuant to Rule 12(b)(6).

2. **Factual Background.**[1]

Goldman Sachs provides financial services, including fiduciary guidance, advice, custodial services, asset management, administrative services and attorney-in-fact services to its clients pursuant to form advisory service agreements. The agreements give the Goldman Sachs discretionary authority over the client's accounts and are governed by New York law. Goldman Sachs provides its services in exchange for a fee–which is based on a fixed percentage of assets held under a client's agreement agreements.

Broadhead alleges that the obligations of the Goldman Sachs under the agreement render Goldman Sachs a fiduciary. As such, Broadhead urges that Goldman Sachs owes its clients a duty to candidly disclose all fees and other amounts assessed to their accounts, together with all financial gain obtained through Goldman Sachs's fiduciary relationship with the class members. Broadhead alleges that, despite this fiduciary obligation, Goldman Sachs failed to disclose various fees earned in connection with the plaintiff's bond transactions. Broadhead complains that Goldman Sachs disclosed private information about the class to various agents who operate the Goldman Sachs bond trading desk. Broadhead further alleges that those agents used the confidential information to reap undisclosed financial gain from the administration and care of the class members' bonds.

According to the plaintiff, Goldman Sachs's agents add extra amounts (mark ups) to certain bond purchase prices as reported to the class members and subtract certain amounts (mark downs) from bond sales prices as reported to the class members. Broadhead contends that it is unaware of the amount of these fees because the trade confirmation statements only reflect a net selling or

---

[1] The court accepts as true the well-pleaded facts in the Complaint. *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 593 (5th Cir. 1991).

purchase price, instead of the actual purchase and sales prices for the bonds. According to Broadhead, the failure to disclose fully these mark ups and mark downs have caused Goldman Sachs to reap an unjustified financial gain at the expense of the class members.

Based on these facts, Broadhead alleges various claims for relief. First, Broadhead alleges state law claims for breach of fiduciary duty, breach of contract and unjust enrichment. Under the state law claims, Broadhead seeks an accounting and a constructive trust and recovery of damages in the amount of the fiduciary service fees charged to the class. Second, Broadhead alleges a violation of the IAA. 15 U.S.C. § 80b-6. As the remedy for the alleged violation of the IAA, Broadhead asks for rescission of the agreement and restitution of the fiduciary service fees paid to the defendant. Finally, the Complaint does not allege actual fraud. Broadhead purposefully distances itself from those claims. In addition, Broadhead does not seek to recover the undisclosed mark ups or mark downs, or any diminution in value to any securities held in its account.

Goldman Sachs filed a motion to dismiss. Goldman Sachs argues that the state law claims are preempted by SLUSA and certain provisions in the agreement. Goldman Sachs also argues that Broadhead has failed to state a claim under the IAA and, in any event, an IAA claim is barred by the applicable statute of limitations.

3.     **Standards applicable to Rule 12(b)(6) motions.**

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The court does not accept as true conclusory allegations or unwarranted deductions of fact. *Tuchman v. DSC*

*Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). A court may grant a motion under Rule 12(b)(6) only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Usually, the court's review is circumscribed to the allegations in the complaint, and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court may also consider, however, documents attached to a motion to dismiss if the plaintiff refers to them in the complaint and they are central to the claim. *Id.* at 498-99. Bearing these standards in mind, the court now turns to the merits of the motion to dismiss.

**4.    Discussion.**

    **A.    SLUSA Preemption.**

Goldman Sachs argues that all of Broadhead's state law claims are preempted by SLUSA. The court agrees.

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA") to combat strike suits and securities class actions. The PSLRA contains demanding pleading requirements. In response to the enactment of the PSLRA, class action plaintiffs sought to circumvent these requirements by filing securities cases in state courts. In response, Congress passed SLUSA, which includes a broad preemption and removal provision directed toward securities suits filed in state courts alleging violations of state law.

SLUSA provides in relevant part:

(1) No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging–

    (A) a misrepresentation or omission of a material fact *in connection with the*

> *purchase or sale of a covered security*; or
>
> > (B) that the defendant used or employed any manipulative or deceptive device or contrivance *in connection with the purchase or sale of a covered security.*
>
> (2) Removal of covered class actions
>
> > Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)-(2).

The Senate Report reflects that Congress "inten[ded] that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S. Rep. No. 105-182, *available at* 1998 WL 226714, *8 (Leg. Hist.). SLUSA applies if (1) the suit is a covered class action, (2) the plaintiffs' claims are based on state law, (3) one or more covered securities has been purchased or sold, and (4) the defendants misrepresented or omitted a material fact 'in connection with the purchase or sale of such security. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1092 (11th Cir. 2002).

The Supreme Court recently addressed the scope of SLUSA, recognizing the policy goal underlying the act was the "federal interest in protecting the integrity and efficiency of the national securities market . . ." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, __ US __ (2006); 126 S.Ct. 1503, 1509 (2006). The Court held SLUSA should be interpreted broadly because "a narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act, and thus run contrary to the SLUSA's stated purpose [of] prevent[ing] certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives' of the 1995 Act." *Id*. at 1513.

*Dabit* reversed a Second Circuit opinion interpreting the SLUSA to only reach purchasers and sellers of securities, and not holders. *Dabit*, __ U.S. at __,126 S.Ct. at 1508. The Supreme Court adopted a broad construction of "in connection with" and held that SLUSA applied to claims alleging that the plaintiffs "were fraudulently induced, not to sell or purchase, but to retain or delay selling their securities." *Id.* The Court supported its broad construction of the statute with prior decisions that broadly interpreted the "in connection with" requirement of the PSLRA. The Court reasoned that "Congress can hardly have been unaware of the broad construction adopted by both this Court and the SEC when it imported the key phrase-'in connection with the purchase or sale'- into SLUSA's core provision." *Id.*

As in *Dabit*, the key question in this case is whether Broadhead's claims involve misrepresentations or omissions of material facts in connection with the purchase or sale of securities. A brief review of the relevant decisions reveals that the circuit courts, consistent with *Dabit*, have adopted a broad view of the statutory language. For instance, in *Miller v. Nationwide Life Insurance Co.*, 391 F.3d 698, 701-02 (5th Cir. 2004), the plaintiff purchased annuities from the defendant with the understanding there would be no fees charged. *Id.* at 698. The plaintiff filed suit claiming violations under the 1933 Act after realizing he had been charged short-term trading fees contrary to his contract. *Id.* The court found the claims alleging federal securities law violations to be barred by the statute of limitations, and further dismissed the state law breach of contract claim pursuant to SLUSA. *Id.* at 701-02. The court emphasized that preemption "hinges on the content of the allegations–not on the label affixed to the cause of action." *Id.* at 702. The court concluded that the breach of contract claim was "in connection with" the sales of the securities, because Miller had alleged both untrue statements and omissions of material fact in his state law breach of contract

claim. *Id.* at 702.

Likewise, in *Behlen v. Merrell Lynch*, the plaintiff asserted various state law claims such as breach of contract, breach of fiduciary duty, and unjust enrichment. 311 F.3d at 1089. The plaintiff asserted that the defendant sold him a more expensive class of shares when he was eligible to buy a less expensive class. The defendant removed the case to federal court, whereupon the plaintiff removed all explicit references to fraudulent activity and argued that SLUSA was no longer applicable. *Id.* at 1089-90. The court in *Behlen* recognized that the defendant repeatedly sold the plaintiff the higher class shares over time while concealing the true facts about those sales. *Id.* The court found that the very reason the plaintiff was sold the higher class shares was because of the higher fees and commissions. *Id.* Thus, the fees and commissions were not merely incidental to the sale of the securities, but were an integral part of the transactions, making the misrepresentations "in connection with" the sale. *Id.*

On the other hand, the court in *Green v. Ameritrade, Inc.*, 279 F.3d 590, 598 (8th Cir. 2002), found the plaintiff's claims not to be "in connection with the purchase or sale of securities." There, the defendant contracted with the plaintiff to provide real time quotes for stock prices, which in fact were delayed by more than an hour. *Id.* at 594. The court held the defendant's breach of contract claim was not "in connection with" the sale of securities, reasoning that the plaintiff was not required to "prove there was a sale or purchase of a covered security in reliance on the misrepresentation" to satisfy his claim. *Id.* at 599. The plaintiff was merely not getting a service it had contracted for. *Id.* at 598-99.

Given the allegations in this case, the court has little difficulty concluding that Broadhead's claims involve alleged misrepresentations or omissions made in connections with the purchase or

sale of securities. Although Broadhead states it is not suing for fraud, the controlling case law disregards the labels assigned to the causes of action and looks to the facts. Here, Broadhead complains that Goldman Sachs breached its fiduciary duty by failing to disclose fees associated with bond purchases and sales. The omissions--failures to disclose mark ups and mark downs on bond trades–occurred over an extended period of time and depend entirely on the purchase or sale of covered securities. Given the broad interpretation of SLUSA's preemption provision adopted by the Supreme Court in *Dabit*, all of the plaintiff's state law claims are preempted by SLUSA. The court grants the motion to dismiss the state law claims.

      B.      **Investment Advisers Act claim**

Goldman Sachs also asks the court to dismiss Broadhead's federal law claim under the IAA. The IAA, 15 U.S.C. § 80b-1, *et seq.*, "was enacted to deal with abuses that Congress had found to exist in the investment advisers industry." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). The IAA generally prohibits fraudulent practices by investment advisers, making it unlawful for any investment adviser to employ any device, scheme, or artifice to defraud or engage in any transaction, practice, or course of business which operates as a fraud or deceit on a prospective client. 15 U.S.C. § 80b-6. In addition, the IAA prohibits an adviser from engaging in certain transactions with clients without making required disclosures. *Id*.

The IAA contains no express provision authorizing a private right of action; rather, the Act vests enforcement of its proscriptions with the Securities and Exchange Commission. 15 U.S.C. § 80b-9. In *Transamerica*, the Supreme Court rejected the argument that the IAA broadly implied a private right of action in favor of clients of investment advisors. *Id*. at 24. To the contrary, the Court held that the IAA created only one limited private right of action. The IAA declares certain

investment adviser contracts void if they violate the provisions of the IAA.  15 U.S.C. § 80b-15(b). As a result, the Court found that Congress "intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution."  *Id*. at 19.

Goldman Sachs points to *Transamerica* and argues that Broadhead is not seeking rescission of the contract and that the contract, in any event, is not void under the IAA.  Goldman Sachs argues that the agreement has ended and that the terms of the agreement do not violate any provision of the IAA.  As a result, Goldman Sachs requests dismissal of this claim on the merits.

Broadhead points to *Laird v. Integrated Resources*, 897 F.2d 826 (5th Cir. 1990).  In *Laird*, the plaintiff was a trustee of a profit sharing plan who sought professional assistance managing assets.  After the management contract ended, the plaintiff learned about the agent's failure to disclose commissions.  The plaintiff brought suit claiming a violation of the IAA and sought rescission and restitution under *Transamerica*.  The Fifth Circuit held that this was a valid claim for relief.  *Id.* at 839.  *Laird* controls this case and forecloses the argument in support of dismissal. Broadhead has stated a valid claim for relief under the IAA.

Alternatively, Goldman Sachs seeks dismissal of the IAA claim on the grounds that limitations bars the claim.  Effective July 30, 2002, the Sarbanes-Oxley Act requires a plaintiff to bring a claim for violation of the act within five years after the violation or two years after discovery of the violation, whichever is *earlier*.  Goldman Sachs argues that plaintiff was on inquiry notice more than two years ago and seeks a dismissal of the IAA claim.  The plaintiff argues that the issue of inquiry notice is fact-intensive and is not subject to dismissal under Rule 12(b)(6).

For purposes of limitations, discovery occurs when a potential plaintiff has inquiry or actual

notice of a violation. Usually, the question whether a plaintiff has sufficient facts to place it on inquiry notice in the securities context is one of fact, and a Rule 12(b)(6) dismissal will often be inappropriate. *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997). However, when inquiry notice is clearly established, dismissal of a claim as time barred is proper. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005).

The relevant provision of the advisory agreement states that in transactions in which Goldman Sachs acts as a principal (by selling a security that it owns to an account holder or buying from the account holder a security for its own account), Goldman Sachs will normally mark up the price of the security sold to the plaintiff or mark down the price of a security it purchased from the plaintiff. Advisory Agreement ¶ 5(b). In addition, the Goldman Sachs Adviser Registration Form details the Private Client Services Fees and states that in addition to the advisory fee, the clients in the Private Client Services Group will pay brokerage commissions, mark-ups, mark-downs and/or other commission equivalents related to transactions effected for their advisory accounts. *See* Goldman Sachs Form ADV Part II, Item 1.D. Finally, the defendant points to trade confirmation statements sent to the plaintiff after each transaction. Goldman Sachs asserts that the trade confirmations, coupled with the disclosures in the advisory agreement and the registration form, gave the plaintiff all the information it needed to investigate whether additional fees were charged or paid in connection with the bond transactions.

The court disagrees that Goldman Sachs has established inquiry notice sufficiently to win a Rule 12(b)(6) dismissal. The court agrees that the broker/customer relationship does not relieve the customer of the obligation to file a claim within the limitations period. *Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998). Nevertheless, as Judge Folsom recently observed, a

defendant bears a "heavy burden" to establish inquiry notice as a matter of law. *Luke v. Lincoln Nat. Life Ins. Co.*, 5:03-CV-256 (Dkt. #67)(E.D. Tex. February 8, 2006)*(citing Phillips v. Kidder, Peabody & Co.*, 782 F. Supp. 854, 859 (S.D.N.Y. 1991)). Goldman Sachs has not sufficiently explained in its motion to dismiss how these documents disclose the mark-ups or mark-downs sufficient to impute inquiry notice to Broadhead as a matter of law. The court is not persuaded that the terms of the account agreement, registration form, and the statements sent to the plaintiff are sufficient, at this stage of the case, to justify a dismissal under Rule 12(b)(6) on limitations grounds.

Finally, Goldman Sachs relies on the terms of the advisory agreement to limit its liability in this case. The relevant clause provides:

> Goldman Sachs shall not be liable for any expenses, losses, damages, demands, charges and claims of any kind or nature whatsoever . . .(collectively "Losses") by or with respect to the Investment Account except to the extent that such Losses are actual investment losses (and not incidental Losses or expenses) which are the direct result of an act or omission taken or omitted by Goldman Sachs . . . which constitutes gross negligence or bad faith with respect to Goldman Sachs' obligations to select and execute transactions in accordance with the Investment Guidelines as described in Section 2 hereof.

Advisory Agreement § 9(a). According to Goldman Sachs, the limitation of liability clause restricts recover to "actual investment losses." Because Broadhead seeks to recover only its advisory fees, Goldman Sachs contends the liability provision bars the claim. Despite Goldman Sachs' reliance on this provision, the court rejects this argument in the context of the IAA cause of action. If the plaintiff prevails on its claim under the IAA, rescission of the contract, including the liability limitation, will be appropriate.

**5.      Conclusion.**

The court grants in part and denies in part the defendant's motion to dismiss (#18). SLUSA

preempts all of the plaintiff's state law claims.  They are dismissed with prejudice.  Plaintiff has stated a claim under the IAA.  The motion to dismiss is denied with respect to that claim.

SIGNED this 26th day of March, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE